GARNET HATCHER v. LUTHER J. CLAYTON AND OWEN PASS.

(Filed 30 June, 1955.)

1. **Automobiles §§ 16, 18h (2)—**

   Evidence, considered in the light most favorable to plaintiff, tending to show that plaintiff was standing 7 or 8 feet from the hard surface on the west side of a highway, and, while his attention was attracted to the south, was struck by a vehicle approaching from the north, *is held* sufficient to be submitted to the jury on the issue of negligence of the operator of the vehicle.

2. **Automobiles § 24½ e—**

   Admission by one defendant that he owned the vehicle driven by another and involved in the accident is sufficient to require submission of the issue of agency to the jury. G.S. 20-71.1.

3. **Appeal and Error § 29—**

   Assignments of error in support of which no argument is stated or authority cited are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

4. **Appeal and Error § 38—**

   When the charge of the court is not in the record, it will be presumed that the jury was instructed correctly on every principle of law applicable to the facts.

5. **Appeal and Error § 39e—**

   The exclusion of testimony cannot be held prejudicial when the record fails to disclose what the witness would have testified had he been permitted to answer the questions.

6. **Same—**

   Where the driver and the owner of a vehicle make common defense in an action to recover for alleged negligent operation of the vehicle, and the driver, while under examination in his own behalf, testifies in detail as to the absence of conversation or arrangement between him and the owner

with reference to his use of the truck on the occasion in question, the exclusion of his testimony on his examination by the owner as to the absence of such conversation or arrangement, cannot be prejudicial.

**7. Automobiles § 18g (5)—Testimony of tracks may be competent as corroborative evidence of location even though tracks are not identified as those of defendant's vehicle.**

It was admitted that plaintiff, a pedestrian, was struck by a vehicle operated by one of the defendants and owned by the other. The controversy was as to whether plaintiff, at the time of the impact, was standing on the hard surface or was standing some 7 or 8 feet on the shoulder of the road, as testified to by plaintiff. *Held:* Testimony of a witness that some 4 hours after the accident he inspected the scene and saw footprints of a man and tire tracks of a vehicle some 6 to 8 feet off the hard surface in the wet earth, is competent for the purpose of corroborating plaintiff's testimony as to where he was standing when struck, the testimony not being offered for the purpose of identifying the footprints as plaintiff's, or the tire tracks as those of defendant's vehicle.

**8. Trial § 17—**

Where testimony is competent for the purpose of corroboration, its general admission will not be held for error in the absence of a request by the adverse party that its admission be restricted. Rule of Practice in the Supreme Court No. 21.

APPEAL by defendant Pass from *Sharp, Special J.,* November Term, 1954, of PERSON.

Action commenced 23 November, 1951, for damages on account of personal injuries sustained by plaintiff when struck by a truck owned by defendant Pass and operated by defendant Clayton.

Plaintiff alleged that his injuries were caused by the negligence of Clayton in the operation of the Pass truck; that Clayton, the driver, was the employee of Pass and was then and there acting within the scope of his employment and in performance of the duties thereof; and that, on account of his injuries, he was entitled to recover from defendants damages in the amount of $35,750.00. Defendant Pass denied that Clayton was negligent in any of the respects alleged, and denied the alleged agency, and pleaded that plaintiff's injuries were caused solely by his own negligence or, in any event, plaintiff's negligence contributed thereto. The answer of defendant Clayton does not appear in the record.

The collision occurred 8 December, 1950, between 6:30 and 7 o'clock a.m., just outside the corporate limits of Roxboro, near the intersection of N. C. Highway 501 and Pointer Street. Clayton operated the truck from his home to said highway, thence south along said highway to the point of collision. His only stop was at Clegg's Grocery and Service Station, where he picked up Clyde Brown. Clegg's place was estimated

to be "about 150 or more yards from the intersection," also "some 100 or 200 feet" north of the point of collision.

Plaintiff lived on Pointer Street. Plaintiff walked along Pointer Street to said highway, where he expected to catch a bus or "get a ride with someone else" to his place of work. According to plaintiff, he had known Clayton some twelve months and "had ridden with him one time before the accident and had ridden with others on various occasions."

Plaintiff testified: "There was a spot on the shoulder of the highway about seven or eight feet from the hard surface which was not so muddy and I stood on that spot. . . . I stood there waiting for the bus to take me to work when I saw the truck . . . stop and pick up Clyde Brown. The truck then proceeded towards where I was standing going in a southerly direction. It was some 125 feet away when I heard a Model A Ford at a filling station south of where I was standing make a terrible noise. I looked in that direction. It was opposite from the direction in which Mr. Pass' truck was coming." According to plaintiff, he knew nothing thereafter until he regained consciousness in the Roxboro Hospital some days later.

Thus, plaintiff's allegations and evidence are based on the theory that he was standing at a safe place on the west side of the hard surfaced portion of said highway, seven or eight feet therefrom, when Clayton without warning operated the truck to his right, leaving the hard surfaced portion of said highway and moving onto the shoulder to the spot where plaintiff was standing.

According to Brown and Clayton, plaintiff had ridden with Clayton "a dozen times" or "about eight or ten times" before the morning of the accident. As Clayton put it, "when he rode with me I was 'custom to picking him up where Pointer Street comes out into 501." On this particular morning, Clayton, according to his testimony, "looked in the Pointer Street intersection and could not see Mr. Hatcher anywhere." Clayton testified further that it had been raining, that it was foggy, and that he was blinded by the lights of approaching cars. Both Clayton and Brown testified that the truck did not leave the hard surfaced portion of said highway. Brown was riding on the right side of the truck. Brown testified: "The first time I saw Mr. Hatcher, the plaintiff was about three feet away standing on the edge of the hard surface about one foot or eighteen inches out on the concrete and I called to Mr. Clayton, saying 'Hatcher.' The front wheels, fender and all missed the plaintiff."

State Highway Patrolman Palmer, a witness for defendants, testified that he received word of the accident at 6:45 o'clock a.m. and went to the intersection of said highway and Pointer Street. He testified that mud from Pointer Street, then unpaved, had washed onto said highway.

He testified further that he found some skid marks of a dual wheel truck on the hard surface, five feet from the edge of the hard surface. He testified: "I did not see any signs of a dual truck wheel track along the shoulder of the road. . . . I do not recall whether there were any people's tracks there or not. There were no car tracks, no vehicle tracks there."

Thus, defendants' allegations and evidence are based on the theory that the truck never left the hard surfaced portion of the highway but that plaintiff came onto the highway and walked or ran against the side of the truck.

The court submitted issues as to negligence, contributory negligence, agency and damages. The jury answered all issues in favor of plaintiff, awarding damages in the amount of $12,750.00.

The court signed judgment on the verdict against both defendants. Defendant Pass excepted and appealed, assigning errors.

*Donald J. Dorey, Beam & Beam, and Gholson & Gholson for plaintiff, appellee.*

*R. B. Dawes and Davis & Davis for defendant Pass, appellant.*

BOBBITT, J. The evidence, when considered in the light most favorable to plaintiff, was sufficient in our opinion to warrant submission thereof to the jury on the issue as to the alleged negligence of Clayton. Admittedly, Pass owned the truck operated by Clayton. Such admission was sufficient to require submission of the issue of agency to the jury. G.S. 20-71.1; *Davis v. Lawrence, post,* 496, and cases cited. Assignments of error directed to the denial of appellant's motions for judgment of nonsuit are overruled. Indeed, they are deemed abandoned; for no reason or argument is stated and no authority is cited in appellant's brief in support thereof. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544; *S. v. Cole,* 241 N.C. 576, 86 S.E. 2d 203.

The charge of the trial court was not included in the record on appeal. Hence, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *S. v. Harrison,* 239 N.C. 659, 80 S.E. 2d 481; *Todd v. Mackie,* 160 N.C. 352, 76 S.E. 245.

Appellant's assignments of error #3 and #4 are based on exceptions 7-12, inclusive. Assignment #3 asserts that the court erred in excluding testimony of Clayton, the alleged agent; and assignment #4 asserts that the court erred in denying to appellant his right to a full cross-examination of Clayton.

As to exceptions 7, 8, 10 and 11, relating to instances where the court sustained objections to questions asked Clayton by appellant's counsel, the record fails to show what the witness would have testified had he

been permitted to answer. Hence, there is no basis for a consideration of these exceptions. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745; *S. v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342.

The question involved in exception 9 is as follows: "Mr. Clayton, state whether or not Mr. Pass gave you any instructions on the afternoon of the 7th of December through the 8th of December when you came back in respect to performing any service for him?" If the witness had been permitted to answer, he would have said, "No."

The question involved in exception 12 is as follows: "Mr. Clayton, at the time this accident occurred on December 8, 1950, were you performing any service for the defendant, Owen Pass?" If the witness had been permitted to answer, he would have said, "No."

While the defendants filed separate answers, they made common cause in the defense of plaintiff's action. Thus, when Clayton, after *direct* examination by his separate counsel, was turned over to appellant's counsel for examination, the true character of such examination was that of further *direct* examination rather than cross-examination. No attempt was made by appellant's counsel to impeach Clayton or discredit his testimony.

The court permitted Clayton, while under the examination by appellant's counsel, to testify that he performed no work for Pass from the time he got home on the afternoon of 7 December, 1950, until he left home on 8 December, 1950. Moreover, Clayton testified that he was using the Pass truck "for transportation," that is, as a means of travel between his home and his place of work. Too, when examined by his own separate counsel, Clayton gave detailed testimony of the arrangements he had made with Breeze, appellant's foreman, as to Clayton's use of the Pass truck. All the evidence tended to show that there was no conversation or arrangement between Clayton and Pass, personally, with reference to plaintiff's use of the Pass truck. Moreover, the question involved in exception 9 would seem to require a "yes" or "no" answer to a conclusion rather than a fact.

No prejudicial error being made to appear, said assignments of error #3 and #4 are overruled.

Assignments of error #1 and #2 are based on exceptions 1-5, inclusive. These assignments assert that the court erred in permitting Harold Hatcher to testify, concerning footprints and tire tracks and marks, as set out below.

Harold Hatcher, plaintiff's son, testified that Clayton came to his house about 7:30 a.m. and told him "that he had hit my father with the truck"; that he went first to the hospital to see his father; that, upon leaving the hospital, he went to the place where the accident occurred; and that his observations there were made between 10 and

10:15 a.m. He testified, over objection by appellant, as follows: "On the morning of the accident I went down Pointer Street to No. 501 and, as I said awhile ago, I saw the footprints of a man. I saw the tracks there. They were approximately six to eight feet off the west side of the hard surface . . . Later on, I saw the tracks, the marks of a dual wheel truck where they had run off the hard surface. It first ran off approximately 45 feet from where the footprints of a man were."

Appellant contends that Harold Hatcher's testimony, set out above, should have been excluded on the ground that the footprints were not sufficiently identified as plaintiff's footprints and the tracks were not sufficiently identified as those of Pass' dual wheel truck, citing *McAbee v. Love,* 238 N.C. 560, 78 S.E. 2d 405; *S. v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908; *S. v. Ormond,* 211 N.C. 437, 191 S.E. 22; *Goss v. Williams,* 196 N.C. 213, 145 S.E. 169; *S. v. Young,* 187 N.C. 698, 122 S.E. 667; Annotation: Admissibility of evidence as to tire tracks or marks on or near highway, 23 A.L.R. 2d 112 *et seq.*

But this testimony was not offered to identify the Pass dual wheel truck as the vehicle that struck and injured plaintiff. This was admitted. The case, in point of fact, turned largely on this crucial question, viz.: Was plaintiff on the west shoulder of the highway when struck as contended by him or on the hard surfaced portion thereof as contended by appellant?

Conceding that Harold Hatcher's testimony was insufficient to identify the footprints and the dual wheel tracks, yet testimony as to *a man's footprints* and as to *dual wheel tracks* where plaintiff contended he was standing when hit was relevant and competent as tending to corroborate the testimony of plaintiff; and testimony as to the absence of *a man's footprints* and of *dual wheel tracks* at such location was relevant and competent as tending to corroborate the testimony of defense witnesses. Harold Hatcher did not attempt to identify the footprints and the dual wheel tracks. The significance of the testimony is in the fact that a failure to show the presence of, as well as testimony tending to show the absence of, *any such footprints and tracks* on the shoulder of the highway after a rain would be a circumstance tending strongly to discredit plaintiff's testimony. Harold Hatcher's testimony, being relevant and competent as corroborative evidence as indicated, was properly admitted. The appellant was entitled, had he so requested, to have the jury instructed to consider this testimony only for the restricted purpose of corroboration. Stansbury, N. C. Evidence, sec. 79. In the absence of such request, its admission without restriction cannot be successfully challenged. Rule 21, Rules of Practice in the Supreme Court, 221 N.C. 558; *S. v. Cole, supra; S. v. Eason, ante,* 59, 86 S.E. 2d 774; *S. v. Ham,* 224 N.C. 128, 29 S.E. 2d 449.

As stated above, there was sharp conflict in the evidence. The issues were duly submitted to the jury under instructions presumed correct. The verdict and judgment must be upheld, for we find no error in law sufficient to warrant a new trial.

No error.